# Sutterly, Appellant, v. Fleshman.

*Contracts—Gambling transactions—Payment of losses—Recovery back.*

1. In Pennsylvania the loser in a gambling transaction who has paid his losses, cannot recover them back.

2. The courts of Pennsylvania will not, through any consideration of comity, enforce a right given by the statute of another state to a loser in a gambling transaction to recover back losses which he has already paid.

3. Where either of two parties to a gambling contract has money in his hands to which the other is entitled, the action for the recovery of such money is in assumpsit and not in trespass. If the transaction, however, involves fraud or misrepresentation, the action may be in trespass.

Argued Dec. 16, 1906.  Appeal, No. 186, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1905, No. 393, on verdict for defendants in case of Edward C. Sutterly v. Cora M. Fleshman, administratrix of James B. Fleshman, deceased, substituted in place of said James B. Fleshman and Maurice H. Power, trading as J. B. Fleshman & Company.  Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ.  Affirmed.

Trespass to recover back losses paid in a gambling contract. Before Carr, J.

Verdict and judgment for defendants.  Plaintiff appealed.

*Error assigned* was in refusing binding instructions for plaintiff.

*Trevor T. Matthews,* for appellant.—The laws of one state are enforced in the courts of another state, not only on the ground of comity, but also on the grounds of necessity: Forepaugh v. R. R. Co., 128 Pa. 217; McAllister v. Hoffman, 16 S. & R. 147.

*G. W. Pepper,* with him *A. S. L. Shields,* for appellees.—It has long been settled, that the real question is whether the money is still in the stakeholder's hands.  If it is, it may be recovered even after the bet has been won or lost.  If the money

has been paid to the winner, that is the end of the matter; no one has any rights: McAllister v. Hoffman, 16 S. & R. 147.

Comity between different states does not require a law of one state to be executed in another, when it would be against the public policy of the latter state: Pope v. Hanke, 40 N. E. Repr. 839; Knight v. R. R. Co., 108 Pa. 250.

OPINION BY PORTER, J., October 11, 1909:

The plaintiff brought an action of trespass against the defendants and filed a statement averring that, in October and November, 1904, he had engaged in certain stock gambling transactions with the defendants, that they had made three separate .wagers, dependent upon the rise and fall of certain stocks; that as a stake or security for said wagers he had paid to the defendants, at various times, sums of money aggregating $1,400; that the bets were made and were to be executed at Trenton, in the state of New Jersey; that according to the laws of the state of New Jersey the bets were illegal and void and upon suit being brought to recover the amount of money so paid and deposited, to secure the performance of the terms of said bets, the money so deposited could be recovered back, if an action should be brought to recover the same within six months after the payment of the money and that this action was brought within said period; that the plaintiff .through his authorized agent had demanded of the defendants the payment to him of the sum of $1,400, so paid on account of said bets; and that the said defendants had failed and neglected to comply with said demand and had converted and appropriated the said money to their own use. The averments upon which plaintiff asserted his right to recover were such as, prior to the act of 1887, would have designated an action of trover as the proper remedy for the injury of which he complained, the alleged conversion of the money by the defendants. The action was in accordance with the act of 1887, designated generally an action of trespass, but there was nothing averred in the statement nor suggested by the evidence which in any manner would sustain an action of tort, as between the parties, unless the refusal of the defendants to pay over the money on demand

constituted such a conversion as would have sustained an action of trover, at common law.

The defendants submitted a point requesting the court to charge that, "There is no evidence in this case of a conversion by the defendants, and the verdict in this case must be for the defendants;" which point the court affirmed. The point thus presented squarely raised the question of the plaintiff's right, under the evidence, to recover in this form of action. The evidence presented by the plaintiff, if believed, established that the plaintiff had been for several years engaged in making wagering contracts with the defendants upon the rise and fall of the prices of stocks and that all the said transactions had been settled by the mere payment of differences, there having been no deliveries made under the contracts and none ever having been contemplated. All of the transactions had been settled, except the last three, which were involved in this action. The plaintiff had in the three transactions in question paid to the defendants, as margins, various sums of money aggregating $1,400, and it is, under his own testimony, evident that nearly all of the margins so advanced by him had been lost, by movements in the prices of stocks adversely to his wagers. That wagering contracts of all kinds are contrary to the common law of Pennsylvania is too well settled to require citation of authority. Wagering contracts of the character of that with which we are now dealing are void, not because they are within the provisions of the Act of April 22, 1794, 3 Smith's Laws, 177; Hirst v. Maag, 13 Pa. Superior Ct. 4; Bank v. Arnold, 187 Pa. 356, but because they have been uniformly held to be contra bonos mores, and, for that reason, incapable of enforcement at law: Brua's Appeal, 55 Pa. 294. The settled public policy of the commonwealth refuses to lend the aid of its courts in gambling transactions, either to the winner to compel payment of his unpaid gains, or to the loser who has paid his losses, to enable him to recover them back: McAllister v. Hoffman, 16 S. & R. 147; Ruchizky v. DeHaven, 97 Pa. 202; Albertson v. Laughlin, 173 Pa. 525. The New Jersey statute, which the plaintiff offered in evidence, does unquestionably enact that a loser may recover the money which has actually been paid into

the hands of the winner, and the plaintiff contends that, under the provisions of the constitution of the United States, the courts of Pennsylvania are in this action required to enforce the provisions of the New Jersey statute. While a foreign statute has no extraterritorial force, rights under it, not contrary to the policy of this state will, by comity be enforced by remedies according to the procedure of this state: Watson v. Brewster, 1 Pa., 381; Thornton v. Insurance Company, 31 Pa. 529; Knight v. Railroad Company, 108 Pa. 250; Forepaugh v. Railroad Company, 128 Pa. 217. The state policy decides to what extent the state will entertain in its courts transitory actions, where the causes of action have arisen in other jurisdictions. Different states may have different policies and the same state may have different policies at different times. When dealing with rights of this character the state may, without violation of the restrictions of the constitution of the United States adopt any policy which operates in the same way on the rights of its own citizens and those of citizens of other states, giving to one class all the privileges which it affords to the other: Chambers v. Baltimore & Ohio Railroad Company, 207 U. S. 142. The state of Pennsylvania, in pursuance of a long-established and well-founded public policy, declines to permit her courts to hear those who seek to recover money which has been actually paid to the winner in wagering contracts, and the constitution of the United States does not require that foreign gamblers should enjoy rights which the commonwealth denies to her own citizens. The plaintiff was not, therefore, in any form of action, entitled to recover the money which he had lost in these wagering contracts and which had actually been paid to the winner.

The plaintiff had voluntarily paid to, or deposited with, the defendants the money which he now seeks to recover, and there is not in the evidence anything which suggests that the payment was induced by fraud or misrepresentation. There was nothing in the mere circumstances under which the money passed into the hands of the defendants which could afford any ground for an attempt to recover it in an action of trespass. There was no agreement that the defendants should hold the

money in a trust capacity, or that they should treat the fund as a special deposit, or that they should keep it separate from their other funds and return the identical coin or bills. There is nothing in the New Jersey statute which required these defendants to keep the money so received by them separate and apart from other funds or to do any particular thing with regard to the coin or bills which they so received. That statute made the acts of both the plaintiff and defendants unlawful, and gave to the plaintiff the right to recover the money which he had so paid "in an action of debt" founded on the statute; "in which action it shall be sufficient to declare for so much money had and received for the plaintiff's use." The nature of the right which it gave the plaintiff was to recover, as if in an action upon contract. If we consider the nature of this right and then seek for the proper remedy under the law of Pennsylvania, for the enforcement of such right, the remedy must be by an action of assumpsit, and not as if for a tort. If we consider only the law of Pennsylvania, as applied to such transactions, then the right of the plaintiff to recover was dependent upon the fact of his having in the hands of the defendants a sum which he had deposited as a wager, which had not been lost and actually paid to the winner. Under such a state of facts a gambler may repent of his unlawful act and the law affords a locus penitentiæ. The law does not in either of the states go so far as to make the placing of wagers, as between the parties, a private trespass by one upon the property of the other. When, in Pennsylvania, one of the parties desires to withdraw from the wagering contract, of the class with which we are now dealing, he may notify the other party, and it then becomes the duty of the broker to repay so much of the deposit of his customer as remains in his hands. This is not because the transaction, as between the parties, involved a trespass, but because of a duty arising by operation of law. "Every person is bound and hath virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by the interpretation, of the law. . . . Whatever, therefore, the laws order one to pay, that becomes instantly a debt, which he hath contracted to discharge:" 3 Bl. Comm. 160.

The action in cases of this character is founded upon this contract implied by the law. When the property which has been deposited as a margin upon a wagering transaction is a chattel, any appropriate remedy may be resorted to for the recovery of the specific chattel, for the promise, which the law implies, is to deliver the property. When the margin which has been deposited consists of money the action must, in the absence of an express contract established by evidence, be founded upon this implied promise arising by operation of law, and must, in Pennsylvania, be in assumpsit. An action of trover will not lie for a sum of money, unless there is an obligation to pay the identical coin or notes which the defendant has received: Life Association v. Catlin, 2 Walker, 338; Davis v. Thompson, 10 Sadler, 563; Carpenter v. Jackson, 2 W. N. C. 436; Parker v. Morrison, 26 Pittsburg Legal Journal, 85. The evidence failed to establish the right of the plaintiff to recover in an action of trespass, and binding instructions were properly given in favor of the defendants.

The judgment is affirmed.