Commonwealth, Appellant, *v.* Cohen.

Argued March 12, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*William H. Turner,* Assistant District Attorney, with him *C. William Kraft, Jr.,* District Attorney, for appellant.

*Louis A. Bloom,* for appellee.

OPINION BY HIRT, J., July 19, 1951:

The first count in each of the nine indictments in these appeals charged the defendant with a violation of §605 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4605. That section, insofar as it is applicable here, provides: "Whoever sets up or establishes, or

causes to be set up or established, any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon; . . . is guilty of a misdemeanor. . . ." At the close of the Commonwealth's testimony, on the consolidated trial of all of the charges, the court properly sustained defendant's demurrers to the evidence as to other counts of the indictments charging violations of §606 and §612 of the Code, 18 PS §§4606, 4612. But the court clearly erred in sustaining demurrers as to the first count in the indictments charging violations of §605. As to that charge the orders will be reversed.

The Commonwealth's evidence was that the defendant Samuel Cohen, on his own admission, was a salesman employed by F. I. Herbert Company of Baltimore, Maryland, and that in the course of his employment he approached nine persons in various parts of Delaware County and delivered to each of them a box containing two Benrus or Bulova wrist watches, two Evans lighters, or similar property, and a punch board. As a part of the "Sales Outfit", so denominated by the Herbert Company, defendant delivered to each of them written instructions as to how the punch board was to be operated and how returns of money were to be made to that company. On receiving the outfit from the defendant each of the above persons signed a receipt for the property and agreed to pay $73.73 to the Herbert Company within 30 days thereafter or sooner on sale of the chances on the punch board. A discount was allowed on payment of the above amount within 10 days. Under the evidence one of the watches, or other item of like value, became the property of the person who received the outfit as a part of his profit for selling the chances on the board and remitting the purchase price to the Herbert Company. Some of the above punch boards when turned over to the police

officers had punches missing, in one instance as many as 62.

In determining the validity of a demurrer, facts which the evidence tend to prove and all inferences reasonably deducible therefrom are admitted. *Commonwealth v. Waters*, 148 Pa. Superior Ct. 473, 25 A. 2d 756. We must take it as established therefore that the defendant sold the outfits in each instance on the terms above stated, to persons who undertook the resale of the chances on the punch boards; some of the boards recovered by the police indicate, as a reasonable inference from the evidence, that punches actually had been sold.

In the popular mind punch boards are not generally recognized as the insidious and pernicious devices that they are. They are likely to be regarded merely as providing a harmless game that can be played for a small fee which most people can afford. But punch boards not only are gambling devices but their operation opens the door to fraud in a variety of forms. In the hands of an unscrupulous operator the returns in money or merchandise are so controlled that they who play the boards win little if anything. The fact that watches or other items of property are displayed with a punch board does not necessarily mean that one who plays the board has a chance of winning any of them. The odds in every instance are against winning and some boards do not pay off at all. In the aggregate the profits from this illicit business build up fortunes[1] which, in the hands of professional violators of the law, become available for other immoral purposes.

Applying the common import of words to the language of the statute, to "set up" or "establish" a "game or device of address or hazard" means the placing in

[1] Cf. The Punch Board Racket—Schendel—Colliers, February 10, 1951.

operation or setting up in business of such device. It can no longer be questioned that a punch board is a "game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked, or betted upon". Section 604 of the Code, 18 PS §4604, classifies punch boards with slot machines as gambling devices and makes the assembling or manufacture of them a misdemeanor. Within a strict construction of the Act the defendant, under the evidence in these cases, clearly did *cause* the punch boards to be set up and established in violation of §605.

*Commonwealth v. Weiss,* 142 Pa. Superior Ct. 524, 16 A. 2d 435 does not rule this case. The question, there, involved the construction of §612 of the Code. Under the circumstances presented by the evidence in that case we held, and by a divided court, that the sale of punch boards was not an offense under the above section which provides that whoever "keeps or exhibits" any gaming device or apparatus is guilty of a nuisance.

The order sustaining the demurrers to the evidence as to the first count of the indictments is reversed in each appeal with a procedendo.