## Biber Appeal

*Myron Markovitz*, for appellant.
*Walter A. Criste*, for Liquor Control Board.

O'KICKI, *J.*, November 18, 1974—This case is an appeal from the imposition of a $300 fine by the Pennsylvania Liquor Control Board upon a licensee, Elgene J. Biber, as a result of a citation charging Mr. Biber with pool selling and bookmaking, and/or permitting gambling on the licensed premises.

The issue in this case is whether a Commonwealth agency (PLCB) may impose, based on the evidence in this case, a fine upon a Commonwealth licensee (Biber), who received from an agent of the Commonwealth (undercover Pennsylvania State Policeman) money to take to a Commonwealth licensed racetrack (the Meadows) and bet such money for the Commonwealth agent, without receiving any consideration for the delivery of the bet or for the return of the winning proceeds to the Commonwealth agent. The facts that give rise to this issue have their spawning on July 18, 1972, when Pennsylvania State Policeman Danner visited the Lorain Hotel in the City of Johnstown. He engaged in a conversation with other patrons about horseracing and betting in general. On one occasion, he or his associate, Trooper Galbraith, accompanied tavern owner and other patrons on a previous trip to the Meadows Racetrack. On other occasions, as charged in the citation, Danner or Galbraith gave their bets to Biber to place for them at the Meadows. They received no receipt for the money given to Biber; they saw no posted race sheet on the licensed premises; they saw no other paraphernalia indicating that an off-track betting operation was being conducted on the premises.

On one occasion, one of the troopers won $9 which was given to him by one of the patrons who had also gone to the track with Biber, the licensee.

Based on this activity, the Pennsylvania Liquor Control Board charged the licensee with pool selling and bookmaking on July 18, 20, 26, 27, 31 and August 5, 1972. From these charges the board found that the licensee, Biber, was engaged in gambling on the premises.

Gambling consists of three elements, the consideration, an element of chance, and a reward. See Mangaro Appeal, 197 Pa. Superior Ct. 10. Following the appellate courts' definition of gambling, we must consider the facts in this case. Biber, the Commonwealth licensee, received no consideration for delivering the bet or for delivering any winnings; Biber set up no chance; the chance was set up by the Commonwealth, by its license for the horseracing track. Biber gave no reward; the Commonwealth through its licensed horseracing track set the odds and gave the reward. Thus, under the facts in this case, there was no evidence to support the elements of gambling on the part of Biber, as required by our appellate courts.

The next sub-issue before this court is whether or not the activity of the Commonwealth licensee, Biber, constituted pool selling and bookmaking.

Pool selling and bookmaking is specifically defined by the Act of June 24, 1939, P.L. 872, sec. 607, 18 P.S. §4607:

"Whoever engages in pool-selling, or bookmaking, or occupies any place with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers, or of selling pools, or records or registers bets or wagers, or sells pools upon the result of any political nomination, appointment or election, or being the owner or lessee or occupant of any premises, knowingly permits the same to be used or occupied for any of such pur-

poses, or keeps, exhibits or employs therein any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depository for gain, hire or reward of any money, property or thing of value staked, wagered or pledged, or to be wagered or pledged upon any such result, or receives, registers, records, forwards, or purports or pretends to forward, to or for any race-course, any money, thing or consideration of value, bet or wager or money, thing or consideration, offered for the purpose of being bet or wagered upon the speed or endurance of any man or beast, or occupied any place with books, papers, apparatus or paraphernalia, for the purpose of receiving or pretending to receive, or for recording or registering or for forwarding, or pretending or attempting to forward in any manner, any money, thing or consideration of value, bet or wagered, or to be bet or wagered, for any other person, or receives or offers to receive any money, thing or consideration of value, bet or to be bet at any race-track, or assists or abets in any manner in any of the acts forbidden by this section, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not more than five hundred dollars ($500), or undergo imprisonment of not more than one (1) year, or both."

It appears from reading the various appellate court decisions that the policy of the Commonwealth is to preclude and prohibit gambling operations which constitute a business for the conductor thereof. See Commonwealth v. Laniewski, 427 Pa. 455; Commonwealth v. Cohen, 169 Pa. Superior Ct. 84, and others. In this case, Biber did not set up or establish any game or device of hazard. The horseracing track is licensed by the Common-

wealth and not by Biber. He did not stake the odds or provide the device or object of the gambling activity. He was not the beneficiary of any money or thing of value as the result of his having placed the bet. Clearly, the elements of pool selling and bookmaking are not present in this factual case.

Based on the record in this case, the court makes the following findings:

(1) The licensee, Biber, received no consideration for taking the bet to the Meadows.

(2) The licensee, Biber, did not set up any element of chance.

(3) The licensee, Biber, did not provide or pay any reward as a result of his delivery of the wager.

(4) No game of chance or hazard upon which money or other thing of value could be bet was found on the licensee's premises or observed on the licensed premises.

(5) No "business" concerned with pool selling or bookmaking was observed on the premises.

(6) No "business" can be found to exist or be inferred from the facts in this case.

(7) The accommodation of taking another's bet to a licensed track of the Commonwealth, whether for patrons of the bar or undercover agents of the State Police, is not the business of pool selling or bookmaking, particularly where it is done in an individual capacity, without profit or gain, and not part of the operation of a tavern or hotel.

## CONCLUSIONS OF LAW

(1) The Pennsylvania Liquor Control Board is without sufficient evidence to impose a sanction or fine upon the licensee, Biber, as a result of gambling and/or pool selling and bookmaking.

290

(2) The Pennsylvania Liquor Control Board is without the required evidence to sustain a violation of The Liquor Code, Act of April 12, 1951, P.L. 90, 47 P.S. §§1-101, et seq., or of The Penal Code in this factual case.

## ORDER

And now, November 18, 1974, the appeal of Elgene L. Biber from the opinion and order of Pennsylvania Liquor Control Board, dated March 18, 1974, imposing a fine of $300, is sustained.